# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1216

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Jermaine Laron Sidney, | * | |
| also known as Jizzle, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 17, 2011
Filed: August 10, 2011

_____

Before RILEY, Chief Judge, GRUENDER, Circuit Judge, and LIMBAUGH,[1] District Judge.

_____

LIMBAUGH, District Judge.

This case presents a variation on a theme from a series of recent cases all holding that the Fair Sentencing Act of 2010 (FSA), which increased the threshold amounts necessary to trigger mandatory minimum sentences in crack cocaine cases, is not retroactive. The published cases alone include *United States v. Brewer*, 624 F.3d 900, 909-10 n.7 (8th Cir. 2010); *United States v. Spires*, 628 F.3d 1049, 1055

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

(8th Cir. 2011); *United States v. Finch*, 630 F.3d 1057, 1063 (8th Cir. 2011); *United States v. Smith*, 632 F.3d 1043, 1047-49 (8th Cir. 2011), *United States v. Neadeau*, 639 F.3d 453, 456 (8th Cir. 2011); and *United States v. Woods*, 642 F.3d 640, 644-45 (8th Cir. 2011).   The variation here, as we understand defendant's argument, is that he should have been allowed to withdraw his plea of guilty for the reason that the change in the penalty provisions for his offense constitutes a "fair and just reason for requesting the withdrawal" as provided under Federal Rule of Criminal Procedure 11(d)(2)(B).   Because this argument ultimately depends on whether the FSA is retroactive, and because this Court has definitively determined that it is not retroactive, the judgment is affirmed.

The charge to which defendant pleaded guilty was possession with intent to distribute 50 grams or more of crack cocaine on or about March 12, 2009, in violation of 21 U.S.C.  § 841(a)(1) and (b)(1), and the plea was entered pursuant to a plea agreement on December 11, 2009.  Then, months later, on August 3, 2010, the FSA was signed into law, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010), which, *inter alia*, increased the quantity of crack cocaine required to impose the mandatory minimum sentence of ten years from 50 grams to 280 grams, 21 U.S.C. § 841(b)(1)(A)(ii)-(iii), (B)(ii)-(iii).  On January 13, 2011, more than a year after the plea was entered, and after several continuances at defendant's behest (all designed to delay the sentencing until after enactment and implementation of the FSA), the trial court[2] overruled defendant's motion to withdraw his plea of guilty and sentenced him to the mandatory minimum of 120 months imprisonment.

At the outset, defendant acknowledges that this Court "appears to have held that the general Federal Savings Statute bars the retroactive application of the FSA."  He

---

[2]The Honorable Richard G. Kopf, United States District Court Judge for District of Nebraska.

also agrees "that if the FSA does not apply to him there was no error in denying his motion to withdraw his guilty plea."  The savings statute, 1 U.S.C. § 109, states:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of such penalty, forfeiture, or liability.

As this Court held in *Brewer*, ". . . the Fair Sentencing Act contains no express statement that it is retroactive, and thus the 'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed." *United States v. Brewer*, 624 F.3d at 909 n.7.; *United States v. Smith*, 632 F.3d at 1047.  This holding notwithstanding, defendant claims that his case is different because unlike the defendants in *Brewer* and *Smith,* who were sentenced before the FSA was passed, he was sentenced after the FSA was passed.  He explains that because he "was in the pipeline pending sentencing. . .he [should] be sentenced under the law in effect at the time he was sentenced."  Since the briefing, however, this Court has ruled in other cases that the timing of the sentence is immaterial, and that the controlling factor is the date on which the crime was committed.  And accordingly, the defendants in those cases suffered no prejudice by the denial of continuances that would have postponed their sentencing dates until after the passage of the FSA and the implementation of new Sentencing Guidelines.  *See United States v. Woods*, 642 F3d. 640, 644-45 (8th Cir. 2011); *United States v. Hawthorne*, No 10-1653, 2011 SL 1237618, at *1 (8th Cir. Apr. 5, 2011) (per curiam); *United States v. McBride*, No. 10-2689, 2011 WL 2206725, at *2 (8th Cir. June 8, 2011) (per curiam).  Nonetheless, defendant offers several other arguments in favor of the retroactive application of the FSA, and in turn, the propriety of this motion to withdraw his plea.

First, he claims that the charge to which he pleaded guilty "does not state a valid offense after the passage of the Fair Sentencing Act" in that "A charge of

possession with intent to distribute 50 grams or more of cocaine base states an entirely different offense with entirely different penalties than possession with intent to distribute more than 280 grams or more of cocaine base." By this we think that defendant is claiming that the offense has been changed altogether — not just the penalty provision alone so that the savings statute, which applies to penalties only, would not be implicated. In any event, this Court disagrees. There is only one offense for possessing with intent to distribute crack cocaine, and the FSA has merely changed the quantities of crack cocaine that set the levels of punishment for the offense. *See United States v. Moss*, 252 F.3d 993, 1002 (8th Cir. 2001) ("Congress intended drug quantity to be a sentencing consideration, not an element of the offense.")

Next, defendant argues, somewhat amorphously, that "The offense to which he pled guilty no longer serves a valid legislative purpose." In support, he cites *Hamm v. City of Rock Hill*, 379 U.S. 306 (1964), for the proposition that "The Supreme Court imputes to Congress 'an intention to avoid inflicting punishment at a time when it can no longer further any legislative purpose, and would be unnecessarily vindictive.'" This argument, however, was later rejected in *Warden v. Marrero*, 417 U.S. 653, 660 (1974), the most recent case in which the Supreme Court analyzed the general savings clause. Despite acknowledging the "ameliorative" effect of the repeal to defendants whose crimes were committed after the repeal of a federal drug statute that barred parole to a defendant sentenced and imprisoned before the repeal, *Marrero*, nonetheless, held that the savings clause precluded retroactive application of the repeal. *Id*. at 657-64.

On this same point, defendant cites *United States v. Douglas*, 746 F. Supp. 2d 220 (D. Me. 2010), and several district court cases that relied on *Douglas*, all of which held that failure to apply the new mandatory minimums to all defendants who are sentenced after the enactment of the FSA is contrary to Congressional intent. *See, e.g.*, *United States v. English*, 757 F. Supp. 2d 900 (S.D. Iowa 2010); *United States v. Whitfield*, No. 2:10CR13, 2010 WL 5387701, at *2 (N.D. Miss. Dec. 21, 2010);

*United States v. Gillam*, 753 F. Supp. 2d 683 (W.D. Mich. 2010). *Douglas* and its progeny base this position, in large part, on the fact that the FSA mandated that the Sentencing Commission "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act," Pub. L. 111-220 § 8, 124 Stat. 2372, 2374. Notably, the Sentencing Commission has included in its amendments that the new Guidelines *are* retroactive such that the new Guidelines apply to all defendants, regardless of the date of their crimes or sentencings. Defendant argues that the inconsistency that would thus be created — defendants whose crimes were committed before the enactment but sentenced after the enactment would be given the benefit of new, reduced Sentencing Guidelines, but not the new, reduced mandatory minimums — cannot have been intended. *United States v. Douglas*, 746 F. Supp. 2d at 229. Defendant concludes that Congress' actions in reducing the penalties for crack cocaine and directing the Sentencing Commission to promulgate Guideline changes on an emergency basis "necessarily implies that the rejected provisions [the old mandatory minimums] should no longer have force."

To be sure, the District Court in *Douglas* has now been affirmed by the First Circuit, *United States v. Douglas*, 644 F.3d 39, 2011 WL 2120163 (1st Cir. May 31, 2011), with essentially the same analysis, focusing on the "necessary implication" of the Act. The Court ruled that "It seems unrealistic to suppose that Congress strongly desired to put the [reduced] guidelines in effect by November 1 even for crimes committed before the FSA but balked at giving the same defendants the benefit of the newly enacted [reduced] mandatory minimums," surmising that "it is likely that *Congress* would wish to apply the new minimums to new sentences." *Id*. at *4 (emphasis in original); *see also United States v. Rojas*, ___ F.3d ___, No. 10-14662, 2011 WL 2623579 (11th Cir. July 6, 2011).

Although the Supreme Court has indeed held that the savings statute may be superseded if that result is compelled either by an express declaration in the new legislation or by the "fair implication" from it, *Marrero*, 417 U.S. at 659-60, n.10 (citing *Great Northern R. Co. v. United States*, 208 U.S. 452, 465-66 (1908)), it is enough of an answer to defendant's point that this Court has already held in *Smith*, *supra*, that no such implication can be gleaned from the FSA. In rejecting the fair or necessary implication argument, this Court explained that,

> . . . the question is not whether Congress intended to "release or extinguish" the prior penalties. That is always the case. The question is whether Congress intended to exempt the repealing act from the general savings statute. Section 109 provides that such an exemption must be "expressly provide[d]" in the repealing statute. Even if we may disregard § 109's clear requirement that an exemption be "expressly" declared in the repealing act, which we doubt, *Smith* fails to call our attention to any language in the FSA from which an intent to exempt could be inferred.

*Smith*, 632 F.3d at 1049. The prospect of fair or necessary implication, this Court added, is a "formidable hurdle," *id*., and "'only the narrowest of spaces is left for argument that the repealer implies that it is applicable to pending cases,'" *id*. (citing *United States v. Blue Sea Line*, 553 F.2d 445, 449 (5th Cir. 1977)).

To the extent that defendant builds his "necessary implication" argument on the apparent inconsistency in the application of the new Sentencing Guidelines versus the statutory mandatory minimums — a sub-issue not expressly addressed in *Smith* — the result is no different. The statutory mandatory minimums have always trumped the Guidelines, even where amended Guidelines would (absent the mandatory minimum) have otherwise called for a shorter sentence. *See United States v. Peters*, 524 F.3d 905, 907 (8th Cir. 2008). Consistency between the two has not been required because the mandatory minimum sentence controls where it results in longer sentences than do the Guidelines. It follows that although the FSA directed the Commission to adopt

new Guidelines, that mandate does not necessarily or even fairly imply that the Guidelines and the mandatory minimums must both be retroactive such that they both apply to pre-FSA conduct. *See, e.g.*, *United States v. Peterson*, __ F. Supp. 2d ___, 2011 WL 797317, at *10 (D.N.D. March 1, 2011); *United States v. Santana*, 761 F. Supp. 2d 131, 156 (E.D.N.Y. 2011).

In the end, the fact remains that Congress could easily have included a single sentence in the FSA to give it retroactive effect, but for whatever reason, it did not do so. It is beyond the province of this Court to do so now.

Defendant's remaining arguments deserve only short shrift. He claims that the failure to apply the FSA to him retroactively "results in penalties that violate the United States Constitution" — in particular, the Ex Post Facto Clause, the Equal Protection Clause, and the Eighth Amendment prohibition against cruel and unusual punishment. The Ex Post Facto Clause, of course, forbids the application of any law that increases punishment to preexisting criminal conduct. U.S. Const. art. I, § 9, cl. 3; Miller v. Florida, 482 U.S. 423, 429-35 (1987). Defendant maintains that "application of the harsher Guidelines in effect at the time the offense was committed, now abrogated by the FSA, would potentially violate the ex post facto clause." This is a perplexing argument, indeed, because the FSA did not create harsher penalties for defendants who committed crimes before the FSA's enactment, it simply reduced the penalties for those defendants who committed crimes after the enactment. There is no ex post facto violation.

Then, as we understand defendant's equal protection claim, because the FSA was enacted to correct the racially disparate impact of the crack-to-cocaine ratios under the Sentencing Guidelines, the failure to implement the FSA retroactively in favor of those defendants whose crimes were committed before the FSA was enacted will deny those defendants equal protection of the laws. This claim, however, ignores well-settled precedent that the old crack-to-cocaine ratios are not equal protection

violations in the first place. *See, e.g.*, *United States v. Clary*, 34 F.3d 709, 712 (8th Cir. 1994) (Congress clearly had rational motives for creating the distinction between crack and powder cocaine); *United States v. McClellon*, 578 F.3d 846, 861 (8th Cir. 2009) ("...a change in the powder-to-base ratio in the Guidelines and the introduction of bills in Congress to change or eliminate the ratio. . .[do not] warrant a different conclusion").

Finally, this Court has repeatedly rejected the argument that the mandatory minimum sentences imposed under the old crack-to-cocaine ratio are "unreasonably harsh penalties" in violation of the Eighth Amendment. *See, e.g.*, *United States v. Mendoza*, 876 F.2d 639, 641 (8th Cir. 1989); *United States v. Neadeau*, 639 F.3d 453, 456 (8th Cir. 2011). Suffice it to say that there is no reason to depart from those holdings now.

In a separate point, defendant again maintains that "[t]he general savings statute should not prevent this Court from allowing withdrawal of the plea," this time arguing specifically that "[t]he statutory change is procedural or remedial, thus exempt from the general savings statute's reach," and "[t]he statutory change redefines a term, and therefore does not trigger the general savings statute." Once again, though, these points merit little attention. This Court has already held in *Smith* that the statutory change is substantive, rather than procedural or remedial. *Smith*, 632 F.3d at 1048. Although defendant is correct that "[t]he general savings statute does not ordinarily apply to remedial or procedural changes," this Court held that "[t]he FSA is a paradigmatic example of a statute intended to ameliorate *substantive* criminal penalties." *Id.* (emphasis added). The same holding applies to the notion that the savings statute is not implicated when a new statute simply redefines a term, which defendant identifies as a corollary to the procedural and remedial exception. The FSA does not simply "redefine the class of persons to whom the mandatory minimums apply," as defendant claims, but instead amends the punishment portion of the statute, thus invoking the savings statute. *See United States v. Bell*, 624 F.3d 803, 815 (7th

Cir. 2010); *United States v. Doggins*, 633 F.3d 379, 384 (5th Cir. 2011). In a last ditch effort, defendant invokes the "rule of lenity," which provides that where there is an ambiguity in a criminal statute, the statute is to be construed in favor of the defendant and against the government. Having found no ambiguity in the FSA, this claim, too, is denied.

For the foregoing reasons, this Court holds that the FSA is not retroactive, even as to defendants who were sentenced after the enactment of the FSA where their criminal conduct occurred before the enactment. Accordingly, there was no "fair and just reason" for allowing defendant to withdraw his plea of guilty under Rule 11. The judgment is affirmed.

_____